on behalf of Habib Saleh. Elizabeth Edwards identified Samuel Miller as the person who assaulted her. She explained to the police that she and Mr. Miller had fought, and she explained what they had fought about and when. How did she do that when she couldn't speak? I understand how she was able to identify him, and they asked him very specific questions. But how did she elaborate? She was asked a series of 78 yes-or-no questions. I understand that. And she asked them. But how could they have yes-or-no questions about, you know, what she – what they fought about, for example? They asked her, did you and Mr. Miller have a fight? She indicated yes, they had. They said, did you fight about another woman? Yes, we had. Was it somebody you knew? Yes. Was it somebody he knew? No. Which was accurately reflected, verified. They had fought about a woman who lived in the building who Mr. Miller was interested in, who didn't know Mr. Miller. He had just observed her and spoken with her briefly on the phone. And so through this series of questions, Officer Walgren also asked if the woman lived in the building. She said yes, and they went through the floors and eventually indicated that Joel Keller could tell her – could tell the officer who the woman was. And, in fact, he did. So then we are left with the question of how Mr. Saleh was convicted of this murder in the face of this evidence. And, in part, this – he was convicted because the prosecution relied upon propensity evidence, the use of which violated his right to the due process of law. All right. Now, on this, I mean, you're making a very narrow challenge, as I understand it, because you are agreeing that it was okay to put in the fact of the assault where he was and so on and everything except the extent of the injuries, which I don't even know if that's bad act evidence. I mean, you're – you agree that the act itself could come in, i.e., that he assaulted this person. The fact of the fight, the – at trial, the defense counsel admitted was relevant to show that he had been bleeding because the State's theory was that he had left this drop of blood. And they also agreed that it was relevant to show that he was in the time and area of West Seattle. So what wasn't admissible, just the extent of the injuries? The nature and extent of Ms. Raleigh's injuries, that's right. Right. That's not really the act. I mean, that's really simply a result of the act, and it's really a sort of 403 problem. The act just is hitting the guy. You're saying that's okay. I guess I would distinguish between the fact of the fight, which we're saying is okay, and the particular nature – maybe the nature and extent of the injuries is an inappropriate term, because what we're contesting is that evidence should not have been admitted, but whether it was a result – I mean, it was certainly a result of these particular acts, and it was this evidence that was admitted. So what should have been excluded, according to your theory? We've been calling it the nature and extent of the injuries, but perhaps it's broader – slightly broader than that. We should say – Yeah, but you need to tell us what error the trial court made in admissing or not admitting evidence. Well, it was in admitting the evidence of the testimony of Officer Willis when he described the injuries that Mr. Alesha had, and the testimony of Mr. Salih's daughter, Sahar, when she was describing these same injuries. And it seems to me that you can't separate the fact of the injury out from the fight. And it was that circumstance, that testimony. In your argument here, it's not just that it's propensity evidence, but at least that kind of propensity evidence violates due process? That's right, Your Honor. And you have a Supreme Court case that so holds? We don't have a Supreme Court case that so holds. Doesn't that sink your argument? It does not. Why don't you need a Supreme Court case? We had – this Court has recognized the constitutional violation, and we contend that there is a constitutional violation, that this amounted to a Fourteenth Amendment violation, which this Court has recognized in cases like McKinney v. Reese and Garso v. Woodson. Is this case not under AEDPA? Are we not giving it away? It is under AEDPA. Under 2254d, there are two provisions, d1 and d2, which are disjunctive. And Mr. Salee is not contending that he can satisfy d1. And in recognition of Alberni, of that – of the recent case, we recognize that we can't satisfy that. But under d2, he is able to show that the State court adjudication was based upon an unreasonable determination of the facts in light of the evidence presented. And that's the argument that we have presented, and the basis – What's unreasonable determination? You mean that this is permissible under the rules of evidence? When the Washington Court of Appeals considered Mr. Salee's argument on direct appeal, it never considered Sahar al-Ayesh's testimony. He presented this argument and presented based on both the testimony of Officer Willis and the testimony of Sahar. The Washington Court of Appeals never considered that evidence. And under this Court's precedent, including Taylor v. Maddox, that disregard for relevant testimony amounts to a d2 violation. But they considered that the issue, didn't they, which is whether or not this – the evidence regarding the injuries was admissible. The fact that it came in through two people instead of one person, what difference does that make? It makes a significant difference in that Sahar's testimony was the testimony about the head injury. It was that particular evidence which the prosecutor relied upon in his closing argument to say that these injuries were strikingly similar and that the only difference between the injuries to Ahmed and the injuries to Ms. Edwards were that Ms. Edwards was asleep at the time. And he relied heavily upon that evidence and not upon the testimony of Officer Willis. And it's precisely the same situation as in Taylor v. Maddox where the Court considered the Miranda claim and they considered the testimony of two of the witnesses but ignored the testimony of the third witness who was critical to the claim, to the defense's claim. And it's – and – But because it was to a different effect, essentially. It was – but here you have two witnesses to the same effect. Except Officer Willis testified about the injuries to the arms and to Ahmed Al-Aish's body, but he specifically said that he had not seen the head injury and that he couldn't really speak to that. He knew that he had a head injury, but he didn't detail it. But it was Ms. Al-Aish's testimony that he had suffered a head injury, that he had required 20 stitches on the top of her head. She demonstrated where on the head it was, and it was precisely this evidence that the State relied upon in its closing argument. Now, the State argues that this is all part of the res gestae. What's your response? My response to that is, this Court has, in cases like United States v. Hill, has explained that this inextricably intertwined rule or doctrine needs to be narrowly construed or becomes completely a perversion of justice, I think is the words this Court has used. And that's what we see here, in that there's no reason why the State could not have presented its case and its theory of what had occurred without that testimony. They certainly could have. It's not like cases that the State relies upon, like United States v. Willard, where really it's one act that has occurred. There are cases where only a portion of what occurred has become charged conduct, but you can't tell the rest of the story without that other evidence. In one of the cases they relied upon, there was a man who was charged with being a felon in possession. His defense was that he hadn't possessed this weapon and that he was just going out dancing. The government was allowed to present testimony that he, in fact, was a lookout for a burglary. And this Court's explanation was that you couldn't explain why this man would have had a gun without the story of the burglary. This is a completely different situation. The State was allowed to present testimony about the fight, and it's just a question about the extent and nature of the injuries that's at issue on this appeal. I think it's also important to recognize that the trial court specifically said that she did not think the judge in the case said that she did not think the nature and extent of the injuries was relevant. When the State Why did it come in? I think it was a mistake on her part. When the State tried to have the photographs of the injuries admitted, she said no. She said the nature of the wounds and the extent of the wounds visited on the son-in-law are not, in my opinion, relevant. And she says that she allowed testimony about the fight to show opportunity, basically, that he was in the area, that he committed an assault, and that he had the opportunity within the time frame. Isn't that all consistent? That seems eminently reasonable to me. Well, she then allowed, over defense objection, the witnesses who were not allowed to show to – who weren't allowed to – when the State wasn't allowed to introduce the photographs through these witnesses, she allowed the witnesses to describe in as much detail as possible the very photographs that she had excluded as irrelevant. And so as we're looking at whether or not … But I thought you conceded that, to the extent that it showed opportunity, that the testimony of the fight could come in. Correct. And that's what she was saying. She was saying, I allowed it in, the fact that the fight in for this limited purpose. But ultimately, you agree that this has to be a D-2 violation or nothing. Yes. And the State appellate court opinion may be slightly confused about whether there were one or two witnesses, but the holding was that testimony regarding the extent of Ahmed's injuries was relevant to permit the State to establish its version of events, which that Sally attacked and so on. And it just doesn't seem pertinent that – whether there were one or two witnesses saying that as to whether there was a mistake made. And that's – ultimately, we would have to think that the error, which does seem to have occurred, as to whether one or two witnesses testified about the extent of the injuries, could have made a difference to the outcome of the State court decision, and I don't see how it could have. I have two comments or responses to that. First is, I do think it's an unreasonable – that given the pertinence of her testimony to this claim, it's really the central testimony to this claim. The Court's not addressing it is per se a violation of – or allows this Court to grant relief under D-2, because it's clearly an unreasonable determination of the facts in light of the evidence presented, in light of Mr. Sally's argument. It seems to have been a mistake, but why did it matter as to the ruling that was made based upon it? I think it's impossible for us to now look at the same ruling and say it would be the same without knowing, in light of the fact that the Court never considered it, it's – Well, we can because it was very specific about its ruling, and testimony in general, testimony regarding the extent of Ahmed's injuries was relevant if Princess May did it, all right? So that's what their conclusion was. It didn't seem to care what testimony, just testimony. But if the Court was only considering Officer Willis's testimony, I don't see how we can at this point say they would have reached the same conclusion had they considered the testimony that was directly relied upon by Mr. Sally on his direct appeal. And I don't see how this is so fundamentally different from Taylor v. Maddox that it warrants a different result. In this case, as in Taylor v. Maddox, the State Court's fact-finding is undermined. And as this Court ruled in that case, it noted that fact-finding is a dynamic, holistic process that presupposes for its legitimacy that the trier of fact has considered all the evidence before it and the record before it. And that's not what occurred here. The Washington Court of Appeals ignored the evidence, despite the fact that Mr. Sally briefed the issue, it was clearly presented, and there was no discussion of it, either in the statement of facts or in the discussion of that particular claim. So do you want to say anything about the Miranda issue? About the Miranda issue? Sure. The inquiry that we're looking at on the Miranda claim is whether the warnings reasonably conveyed to Mr. Sally that his rights, whether they reasonably conveyed that his rights as required by Miranda. The warnings here did not. As the trial court recognized, on March 3rd, Mr. Sally did not understand the warnings that were given to him. And on March 25th, the second time that Detective Ramirez visited him, Mr. Sally invoked his right to counsel. Yet Detective Ramirez continued to ask him questions, knowing full well that those claims or any statements he made would be useless. And that's his word. So it wasn't until Mr. Sally was represented by counsel and the trial court ruled on his motion to suppress that Mr. Sally would have understood what these Miranda warnings meant. They were never vindicated until that moment. So at the time of his conversation on March 26th, Mr. Sally had no reason to understand his Miranda rights. This is the telephone call from the jail. Yes. That's right.  Because in his experience, invoking his Miranda rights simply meant that he would be subject to more questions. So I mean, this case is a little unusual in that the main case law about sort of the fruit of the poisonous tree and Miranda assumes our cases in which there was first questioning and then another without Miranda, and then another Miranda warning, then a Miranda warning, and then more questioning. Now, here, you had the problem wasn't a defect in the Miranda warning on the 25th. It was a violation of it, essentially. Correct. Right? Because he asked for an attorney, and they didn't give him an attorney. And then he talked. Sort of. I mean, he didn't as it turns out, he didn't actually confess either then or later. But he said something. I mean, he's maintained his innocence throughout this entire proceeding. And so, and I don't know how much that matters. It might matter to a prejudice standard. But at any event, he talked. He said something on the 25th. And then he made an affirmative telephone call. But he'd already said this thing on the 25th. And he repeated on the 26th. In a circumstance that was probably, under our case law, not custodial because it was an affirmative telephone call, but still what he said was just repeated what he'd already said impermissibly. That's right. So do you have any case law that deals with a circumstance like that? I have not seen any cases with precisely the same fact pattern where the Miranda rights were invoked and yet violated. Right. And I think if anything, though, that presents a bigger problem. And not repeated. But the second time was not in custody. I mean, we can sort of hypothesize that the second time was like they encountered him in the street. That's not true. But that's the way our case law seems to treat this telephone call. So suppose, you know, he had said something impermissibly, I mean, impermissibly to the government in custody, then was let out and was walking around the streets and somebody, you know, and he walks up to a policeman and tells the story. That's sort of what we have. Well, except for the fact that he's calling the same detective who has given him his card on this prior occasion. And so what did he give him the card? My impression is he gave him the card two years earlier. I think it was actually a little unclear from the record, and I agree. My – I think there was one way to read it like that or that he either gave it to him on the 3rd or the 25th. But I think there was certainly the communication later, after the two years had I see I'm almost out of time. I'd like to reserve a few minutes for rebuttal. You may do so, Counsel. Thank you. We will hear from the State. May it please the Court. My name is Rhonda Larson, Assistant Attorney General for the Appellee. The District Court correctly determined that Petitioner's claims are without merit, and this Court should affirm. The standard in this case is 2254D. And as Appellant admitted, Mr. Soleil's D1 claim is weak, and his D2 claim is the claim that he is relying on for his claim regarding admission of evidence of the injuries to the son-in-law. And regarding that claim, this Court did hold in Alberni v. McDaniel that there is no clearly established Supreme Court precedent regarding propensity evidence. And I did give you a letter recently regarding that case. What about your opponent's argument that he's not relying on the first clause of that section, but the second clause? Yes, Your Honor. The claim was that the Washington Court of Appeals ignored one of the witness's testimonies, Sahar. Actually, the State Court of Appeals decision appropriately reflects the way that Mr. Soleil couched his claim in his State Court briefing. His brief led with a discussion of the officer's testimony. Their not stating Sahar's name is no evidence that they ignored it. The decision's wording is general enough that it reflects that it isn't limited to the officer's testimony. State court evidentiary rulings are State law issues. They are not subject to Habeas Review unless they rendered a trial fundamentally unfair. There could be no fundamental unfairness in this case because the evidence came in on proper grounds. As to the Miranda claim, as we know, he is contesting admission of the 26th, the statements on the 26th, not the statements on the 25th. And no Supreme Court precedent, as was discussed, has established that this was a self-initiated, non-course of conversation, was anything close to a custodial interrogation requiring Miranda warnings. But he was repeating something, at least in the out at least part of what he was repeating, was something he had already said when he was impermissibly asked for a lawyer. And so there was no point in him not repeating it. It was already said. And this isn't really the same as the Elstead-Siebert line of cases, because the problem here wasn't a defect of Miranda warning. It was a violation of a Miranda warning. And then there was no later Miranda warning that sort of was kind of an intervening cause where you could say, well, now he knows what he's allowed to do and not allowed to do. So where things were left with him was he invoked his right to an attorney. He was – it wasn't respected. He said this thing, which was now out. And the fact that he initiated this telephone call seems almost irrelevant to me. The fact is he was simply repeating something. It was as if he just said, ditto. You know, what I said yesterday was true. Would that have been good enough? Your Honor, his Fifth Amendment protection ended when he made the phone call. Number two, the requirement is for there to be a Supreme Court case law clearly on point here. The only one that we see that addresses this cat-out-of-the-bag theory is Organ v. Elstad. And as the panel discussed, that really isn't – What about Siebert? You just ignored Siebert, which is – and our case law following Siebert, which at least suggests that there are limitations to Organ v. Elstad anyway, even if that's the pertinent line of cases, which is a little odd, actually. Your Honor, the case law reflects a general reluctance to make Miranda requirements overly protective in this context. For instance, in Organ v. Elstad, the Court stated that a procedural Miranda violation differs in significant respects from violations of the Fourth Amendment, which have traditionally mandated a broad application of the fruit-of-the-poisonous-tree doctrine. In contrast, the Fifth Amendment is not so expansive. That's the difference in this case. It would be like an inmate calling the – writing a letter to a detective and saying the things that he said. There are no Miranda warnings there. It would be absurd to impose a requirement to Mirandize someone calling a police department. They would have to screen every single call that they get. At this time, he was in custody. But your argument is that that's a different kind of custody? That's correct, Your Honor. Let's pull that out. The Court – this Court has said more than once that Mathis v. United States, for instance, did not create a rule that interrogation during prison confinement constitutes custodial interrogation requiring Miranda warnings. That's U.S. v. Turner. Additionally, that Mathis is inapplicable because that involved a custodial interrogation again, and police initiated a question. I think what I'm having trouble here is understanding why the question is whether he required Miranda warnings. The fact is he had said this the day before at a time when he invoked his right to attorney, and it wasn't respected, right? He had said the same thing, at least what he started out with this time. Yes, Your Honor. But when he initiates the conversation, then his protection ends. That's what you're saying. But I'm asking why we regard this as something different than simply reiterating something that had already been said. So what was the point of not saying it again? It had already been said. And you're saying – it seems to me to be somewhat different from Elstad and Sieber, where at least there was another intervening Miranda warning, which at least in some circumstances you might say, well, now he knows he doesn't have to say it. That's why those were hard cases, because in those instances, the question was, despite the fact that they've now told him he doesn't have to say it, again, if he says it, if it had come out earlier, when does – when is that intervening new Miranda warning not effective? But here there was no Miranda warning. I understand there was also perhaps no custody had he not said it earlier. But the real issue is, does the fruit-of-the-poisonous-tree sort of a doctrine apply when there's nothing intervening to tell him that what he said earlier is not operative? Your Honor, it is an interesting concept, but it would be an extension of the law for this Court to make such a rule. We are in the context of a habeas petition here, and what matters is 2254D's requirement that there be clearly established Supreme Court precedent. And as you explained nicely, there is really not a Supreme Court case that gives us a clear picture here. Anything further, counsel? I have nothing further. Thank you. Thank you, counsel. There's some reserved time. Ms. Endo. I just wanted to address for a brief moment the other act's evidence claim. In just looking at the Washington Court of Appeals decision, the Court framed the issue solely in terms of Officer Wills' testimony. It says, and this is at ER 171, Salih first argues that the trial court abused its discretion by admitting testimony from Officer Kirk Willis describing the extent of injuries Ahmed received. I think it's clear from the Court's opinion that it did not consider Sahar's testimony. Well, what about the briefs in that case? What about your opponent's argument that, well, it was framed that way because that's what was raised in the brief? Give me one second. I'm sorry. I don't have the page right here. But in the brief, and this is at ER 128 or ER 129. ER what? 128 and 129. 128. Go ahead. And for instance, at page 129, the brief reads, Al-Aish, and this is Sahar Al-Aish, was allowed to testify regarding the injuries to Ahmed. In addition to using the same photographs Willis used during his testimony, Al-Aish said that Ahmed received wounds to the top of his head requiring stitches and directs the Court's attention to the relevant pages in the verbatim report of proceedings. If I may turn to the Miranda issue for one more moment. I think the Turner case that the government cites is very different in a lot of ways. First of all, the officer had never violated Mr. Turner's Miranda rights. He had never Mr. Turner had never invoked his rights. It doesn't deal with the fruit of the poisonous tree issue. It just deals with the question that the fact that he was not in custody the second time, but then the question is, what's the relevance of that? I'm sorry. It does demonstrate that he wasn't in custody the second time, right, on the 26th. But the question is, does that matter? I don't think it matters. And I think that the principles underlying decisions like Cyber and the Miranda decision itself and Mathis allow for this Court to grant habeas relief under 2254d1 and that the Turner case is not to the contrary. And I think it's important to recognize that Mr. Salih's Miranda rights were never vindicated. They were never recognized until he went to trial. And for that reason, I think habeas relief is appropriate in this case, both on the Miranda claim and the other claims that we've briefed. The Court doesn't have any further questions? No further questions. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn. Hearing, hearing. All persons having had business with the Honorable Judge of the United States Supreme Court of the Ninth Circuit will now report. The court for this session now stands adjourned. Thank you. Thank you. Thank you. Thank you. Can I make a movie? Oh, yeah. Yeah. I didn't want to talk to you about it. Yeah, I'm actually going to go to sleep. I'll be back. Yeah. Beautiful. Yeah. Thanks a lot.
judges: O'scannlain, Tashima, Berzon